FILED

2025 Jun-05  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RANISHIA R. COLEMAN,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:24-cv-00917-AMM** |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **Commissioner,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OF DECISION

Plaintiff Ranishia R. Coleman brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claim for a period of disability and disability insurance benefits ("benefits"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On May 12, 2021, Ms. Coleman protectively filed an application for benefits under Title II of the Act, alleging disability as of June 8, 2020. R. 56, 107–14. Ms. Coleman alleges disability due to multilevel disc desiccation and low back pain. R. 107.

The Social Security Administration ("SSA") initially denied Ms. Coleman's application on January 14, 2022, and again upon reconsideration on June 3, 2022. R. 56, 107–26. On June 3, 2022, Ms. Coleman filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 56, 146–48. That request was granted. R. 178–80. Ms. Coleman received a telephone hearing before ALJ Monica D. Jackson on November 10, 2022. R. 56, 74–106. On May 26, 2023, ALJ Jackson issued a decision, finding that Ms. Coleman was not disabled from June 8, 2020, through the date of decision. R. 53–67.

Ms. Coleman appealed to the Appeals Council, which denied her request for review on September 6, 2023. R. 25–28. After the Appeals Council denied Ms. Coleman's request for review, R. 25–28, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On November 3, 2023, Ms. Coleman, proceeding *pro se*, sought state court review of the ALJ's decision. *See* Doc. 1-1. On July 11, 2024, the Commissioner filed a Notice of Removal in this court. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 404.1520. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities."

20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done "for pay or profit." 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. 20 C.F.R. § 404.1520(a)(4)(ii), (c). *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. 20 C.F.R.

§ 404.1520(a)(4)(iv). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 404.1520(a)(4)(v). In this step, the ALJ must determine whether the claimant is able to perform any other work commensurate with her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 404.1560(c).

The ALJ determined that Ms. Coleman would meet the insured status requirements of the Act through December 31, 2025. R. 57, 58. Next, the ALJ found that Ms. Coleman "has not engaged in substantial gainful activity since June 8, 2020, the alleged onset date." R. 59. The ALJ decided that Ms. Coleman had the following severe impairments: depressive disorder with anxiety, cannabis use disorder, obesity, and mild disc desiccation. R. 59. The ALJ decided that Ms. Coleman had the following non-severe impairments: benign intracranial hypertension and headaches. R. 59. Overall, the ALJ determined that Ms. Coleman "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 59.

The ALJ found that Ms. Coleman "has the residual functional capacity to perform light work" with certain limitations. R. 61. The ALJ determined that Ms. Coleman can "understand, remember, and carry out simple instructions and make simple work-related decisions"; and "frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs." R. 61. The ALJ determined that Ms. Coleman "can never climb ladders, ropes, or scaffolds." R. 61.

The ALJ determined that Ms. Coleman's past relevant work was that of a cleaner-hospital, assembler, fast food worker, and machine operator. R. 66. Based on the testimony of the vocational expert, the ALJ determined Ms. Coleman "is able to perform [past relevant work] as actually or generally performed." R. 66.

Based on these findings, the ALJ concluded that Ms. Coleman has not been under a disability as defined in the Act, from June 8, 2020, through the date of decision. R. 67. Ms. Coleman now challenges that decision.

## III. Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Walker v. Soc. Sec. Admin, Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the

5

Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. § 405(g). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision "is reasonable and supported by substantial evidence." *See Martin*, 894 F.2d at 1529 (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *Id*. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

Because Ms. Coleman is proceeding *pro se*, the court construes her complaint liberally. *See Curtis v. Comm'r of Soc. Sec.*, 856 F. App'x 276 (11th Cir. 2021) (applying the liberal construction rule to a *pro se* Social Security appeal). However, "issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Gamble v. Comm'r of Soc. Sec.*, 685 F. App'x 889, 890 (11th Cir. 2017) (cleaned up). "To avoid abandonment, a party must plainly and prominently raise a claim or issue." *Anglin v. Soc. Sec. Admin.*, 602 F. App'x 483, 484 (11th Cir. 2015).

## IV.    Discussion

Ms. Coleman argues that her "inability to function and/or work started on June 8, 2020," and she "was reinjured" "in an automobile accident" on July 9, 2020. Doc. 14 at 1. Ms. Coleman "was involved in another automobile accident on May 04, 2022." *Id.* Ms. Coleman cites a March 28, 2021 MRI as evidence of her disability, as well as her "Primary Physician, Chiropractor, and Neurologist." *Id.* Ms. Colemen alleges that all three of her doctors "are now in alignment of [her] being disabled as well by making sure that [she] ha[s] received [her] Alabama Handicap decal." *Id.* at 2. She alleges that in addition to seeing her three doctors regularly, she goes to Christ Health Center Pain Clinic for pain management. *Id.*

Ms. Coleman takes issue with the vocational expert testimony. *Id.* at 1–2. Ms. Coleman claims she "was already declared 'Disabled' August 22, 2022, by Symetra Retirement Benefits Life Insurance Company." *Id.* at 2. Ms. Coleman also alleges

that she qualifies for "1.00 Musculoskeletal Disorders (Multilevel Disc Degeneration), 11.00 Neurological Disorders (Nerve damage/Benign Intracranial Hypertension), and 12.00 Mental Disorders (Anxiety/Depression)." *Id.*

### A. The ALJ's Determination That Ms. Coleman Was Not Disabled

Social Security Ruling 96-8p ("SSR 96-8p") regulates the ALJ's assessment of a claimant's residual functional capacity. Under SSR 96-8p, the residual functional capacity "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." SSR 96-8p at *1, 1996 WL 374184 (July 2, 1996). The ruling specifically mandates a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id.* at *7. Additionally, in cases where symptoms are alleged, the assessment of a claimant's residual functional capacity must: "Contain a thorough discussion and analysis of the objective medical and other evidence . . . ; Include a resolution of any inconsistencies in the evidence as a whole; and Set forth a logical explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.*

A claimant's subjective complaints are insufficient to establish a disability. *See* 20 C.F.R. § 416.929; *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991).

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a claimant claims disability due to pain or other subjective symptoms. The claimant must show evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition, or (2) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged symptoms. *See* 20 C.F.R. § 416.929; Social Security Ruling 16-3p, 2017 WL 5180304, at *3–*4 (Oct. 25, 2017) ("SSR 16-3p"); *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the first part of the standard is satisfied, the ALJ then evaluates the intensity and persistence of a claimant's alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. § 416.929; *Wilson*, 284 F.3d at 1225–26. In evaluating the extent to which a claimant's symptoms affect her capacity to perform basic work activities, the ALJ will consider (1) objective medical evidence, (2) the nature of a claimant's symptoms, (3) the claimant's daily activities, (4) precipitating and aggravating factors, (5) the effectiveness of medication, (6) treatment sought for relief of symptoms, (7) any measures the claimant takes to relieve symptoms, and (8) consistency between a claimant's statements and the rest of the evidence. *See* 20

C.F.R. § 416.929; SSR 16-3p at *4, *7–*8. To discredit a claimant's statements, the ALJ must clearly "articulate explicit and adequate reasons." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The SSA has revised the applicable regulations related to medical opinion evidence. The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. *See* 20 C.F.R. § 404.1520c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id*. And the ALJ "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id.* § 404.1520c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the nature of the relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id.* § 404.1520c(c). Supportability and consistency are the

most important of the five factors, and an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [her] . . . decision." *Id.* § 404.1520c(b)(2). The ALJ may explain how she considered the remaining factors, but she is not required to do so. *Id.* The ALJ is not required to use "magic words" or follow a particular formula to articulate her consideration of the factors. *See id.* § 404.1520c; *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, at \*8 (M.D. Ala. Mar. 30, 2022).

An ALJ's review "must take into account and evaluate the record as a whole." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). There is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision. *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 776 (11th Cir. 2016). Instead, the ALJ must consider the medical evidence as a whole and not broadly reject the evidence in the record. *Id.*

This determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom., Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). The Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains

no indication of the proper application of the standard. *See Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (holding that the ALJ's failure to articulate adequate reasons for only partially crediting the plaintiff's complaints of pain resulted in reversal). "The question is not . . . whether [the] ALJ could have reasonably credited [claimant's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Construed liberally, Ms. Coleman argues that she is unable to work due to the injuries she sustained at work, which were exacerbated by two automobile accidents. Doc. 14. Ms. Coleman argues that the MRI as well as the opinions of her primary care physician, chiropractor, and neurologist are evidence of this disability. *Id.* As additional evidence, she points to her regular doctor's appointments and pain management treatment. *Id.* The Commissioner argues that "the ALJ's decision set out the substantial evidence of record that supported the limitations in the RFC finding." Doc. 16 at 5.

Substantial evidence supports the ALJ's finding that Ms. Coleman had the residual functional capacity to perform light work with certain limitations. R. 61. In making her determination, the ALJ considered Ms. Coleman's testimony, R. 61–62, Ms. Coleman's treatment history, R. 62–65, and medical opinions and prior administrative medical findings, R. 65–66.

The ALJ's decision specifically references Ms. Coleman's "neck and back injury" "she sustained" "while working." R. 61. The ALJ discussed treatment records regarding Ms. Coleman's neck and back pain from her chiropractor, Dr. Ricardo Herring. R. 62–63. The ALJ also discussed treatment records from physical therapy. R. 62–63.

The ALJ specifically discussed the automobile accidents. R. 62 ("In July 2020, [Ms. Coleman] was in a motor vehicle accident."); R. 63 ("In May 2022, [Ms. Coleman] was involved in another motor vehicle accident.").

The ALJ also discussed Ms. Coleman's MRI results. The ALJ stated that "[i]n March 2020, an MRI showed only mild multilevel disc desiccation in [Ms. Coleman's] cervical spine." R. 62 (citing Exhibits 20F and 22F). The "repeated MRI of her cervical spine continued to show only mild desiccation, and she was prescribed physical therapy again." R. 62 (citing Exhibits 7F, 20F, and 24F). In addition to the MRI's, the ALJ discussed "[a] CT of her cervical spine [that] showed no abnormalities," "normal" x-rays, and EMG and nerve conduction studies "which were essential[ly] negative for any peripheral mononeuropathies." R. 62–63.

The ALJ concluded that:

> A limitation to light work is supported by [Ms. Coleman's] repeatedly mild imaging and lack of definitive findings on nerve conduction testing. Despite [Ms. Coleman's] allegations of severe limitations in her ability to sit, stand, and walk, there is nothing to support such severe limitations. There is no reason within the records for [Ms.

13

Coleman] to need to recline most of the day, and no doctor has stated that she needs to rest during the day. [Ms. Coleman] has stated that she can walk her dogs, get her children ready to go to school, drive, grocery shop, cook, do light cleaning, iron, do laundry, vacuum, mop, sweep, and was[h] dishes. She has also stated that she enjoys walks in the park. By her own admissions in 2021, she was able to climb stairs, perform regular activities with only some limitation, and lift light and medium objects that are conveniently positioned, and do her usual work. Additionally, examinations regularly show that [Ms. Coleman] has a normal gait, full strength, and intact sensation. In allowing for fluctuations in [Ms. Coleman's] pain and limitation of range of motion in conjunction with [her] obesity, which [she] has not alleged is disabling, the undersigned finds that the record supports a limitation to light work. To further accommodate [Ms. Coleman's] mild disc desiccation and obesity, the undersigned finds that [Ms. Coleman] should only frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs as more frequent performance could potentially exacerbate [her] pain. Again, these limitations are consistent with [Ms. Coleman's] admitted activities of daily living and with [her] mild findings on examination.

R. 63–64 (citing Exhibits 4E, 2F, 5F, 8F, 12F, 18F, 20F, and 26F).

Additionally, it is clear the ALJ applied the Eleventh Circuit's pain standard. After explaining the pain standard, with citations to 20 C.F.R. § 404.1529 and SSR 16-3p, the ALJ considered Ms. Coleman's testimony about her symptoms. *See* R. 61. The ALJ determined that Ms. Coleman's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Ms. Coleman's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other

evidence in the record." R. 62. Notably, the ALJ stated that "there is very little treatment from May 2022 for [Ms. Coleman's] conditions" and "her most recent appointment shows that she continued to have full strength and sensation and that she had a normal gait." R. 63 (citing Exhibits 25F and 26F).

The ALJ discussed the medical opinions of Dr. Cleon Rogers from Christ Health Center, Dr. Ricardo Herring, and Dr. Dorn Majure. R. 65–66. Despite Ms. Coleman's assertion that her doctors "are now in alignment" that she is disabled, Doc. 14 at 2, the ALJ properly evaluated the opinion evidence under the governing regulations. The ALJ articulated how persuasive she found each opinion and considered the supportability and consistency factors. She stated:

> The opinions within Exhibit 1F are not persuasive. Dr. Cleon Rogers from Christ Health Center's opinions are not supported by the records from Christ Health Center or by the record as a whole. Dr. Herring's opinion is not persuasive. He stated that [Ms. Coleman] is unable to stand for long periods or to lift over 10 pounds. There is no support for such significant limitation, and his own records show improvement in [Ms. Coleman's] condition. The To Whom It May Concern letter from Dr. Herring at Exhibit 21F is not persuasive as his opinion is conclusory and is not presented in a function-by-function format. Additionally, it is not consistent with his own findings of improvement in [Ms. Coleman's] condition. His conclusion that [Ms. Coleman] would have difficulty with her current line of employment is a finding that is reserved for the Commissioner of The Social Security Administration. The opinion by Dr. Majure is not persuasive as it is internally inconsistent. Dr. Majure noted no impairment for [Ms. Coleman] but then stated that [her] prognosis was guarded to poor. With regards to the letter

regarding [Ms. Coleman's] need for service animals due to her severe impairment, the undersigned is not persuaded because this opinion is not supported by the record. There is no diagnosis provided in this letter, and there is no defined limitation. Additionally, the medical evidence does not show that [Ms. Coleman] has limitations related to social interaction or difficulty functioning independently. In fact, [Ms. Coleman] is able to care for herself and for her two children. Additionally, she has not regularly reported any social interaction issues except during her psychological evaluation when she alleged that she has to withdraw due to her depression.

R. 65–66 (citing Exhibits 1F, 15F, 16F, and 21F).

To her complaint, Ms. Coleman attaches a March 27, 2023 progress note from neurologist Dr. Richard Diethelm at Neurology East. Doc. 1-1 at 6. The progress note states she is diagnosed with pseudotumor and "has had no recurrent headache." *Id.* Her motor exam revealed "full strength in all four extremities," with symmetric reflexes and a "[s]teady, unstressed gait." *Id.* She was prescribed Diamox and advised to return to the clinic in one year. *Id.*

To her brief, Ms. Coleman attaches: the ALJ's decision, Doc. 14 at 4–21; portions of the hearing testimony, *id.* at 22–25, 27; the Commissioner's disability determination at the initial level, *id.* at 26; her 2021 MRI results, *id.* at 28, 37–38; a referral to a neurologist for benign intracranial hypertension, *id.* at 32; receipts from chiropractor visits, *id.* at 33–34; evidence of medical care provided by Christ Health Center, *id.* at 29–31, 35, 39–48, 51–59; an appointment card for an annual visit with

her neurologist, *id.* at 36; and the notes from her 2024 visit with her neurologist, *id.* at 49–50.

As noted by the ALJ, the MRI showed relatively normal findings with no significant abnormalities. R. 514–15; Doc. 14 at 28, 37–38 ("IMPRESSION: No focal disc hemiation, spinal canal stenosis or nerve root compression."). Additionally, her 2024 visit with Dr. Diethelm noted that her "[h]eadache has returned," and she is assessed for pseudotumor. Doc. 14 at 49. Her motor exam revealed "full strength in all four extremities," with symmetric reflexes and a "[s]teady, unstressed gait." *Id.* She was prescribed treatment for benign intracranial hypertension. *Id.* at 50.

To the extent Ms. Coleman suggests these documents support her arguments, the court is not persuaded. *First*, it is not this court's job to re-weigh the evidence or substitute its judgment for that of the administrative law judge. *Second*, the medical evidence only reiterates the unremarkable findings noted in the ALJ decision.

After a thorough review of the ALJ opinion and the evidentiary record, the court concludes that the ALJ applied the correct legal standards and substantial evidence supports her decision in crafting Ms. Coleman's residual functional capacity, applying the pain standard, and considering opinion evidence.

## B. The ALJ's Use of Vocational Expert Testimony

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The hypothetical question posed by the ALJ need not include impairments that the ALJ has properly determined to be unsupported by the evidentiary record. *Crawford v. Comm'r*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Ms. Coleman alleges that the vocational expert testified that Ms. Coleman could not "return to work due to [her] chronic injuries and medications." Doc. 1-1 at 4. Ms. Coleman also alleges "that the testimony that the [vocational] expert gave did not consider any other limitations besides those provided by the administrative law judge." Doc. 14 at 1. Finally, Ms. Coleman cites the hearing transcript for testimony by the vocational expert related to absenteeism in response to a question from her attorney. *Id.* at 2. The Commissioner does not respond to Ms. Coleman's argument regarding the vocational expert testimony. *See generally* Doc. 16.

After considering the "entire record," the ALJ found that Ms. Coleman has:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the individual can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The individual can never climb ladders, ropes, or scaffolds. Can understand, remember, and carry out simple instructions and make simple work-related decisions.

R. 61. At the administrative hearing, the ALJ posed a hypothetical question and a series of follow-up questions to the vocational expert. R. 102–04. The ALJ's hypothetical question incorporated the residual functional capacity that she crafted after her review of the record:

> Q: . . . So, if you would assume a hypothetical individual of the claimant's age and education and with the past jobs that you described, further assume that this individual is limited to light work as defined in the regulations.
>
> The individual can frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. The individual can never climb ladders, ropes or scaffolds, can understand, remember, and carry out simple instructions, and make simple work-related decisions.
>
> Can this individual perform any of the past jobs that you described?

R. 102. The vocational expert testified that the hypothetical individual could perform the cleaner-hospital as performed, the assembler as generally or customarily performed, the fast food worker both as performed as well as generally or customarily performed, and the machine operator both as performed as well as generally or customarily performed. R. 102–03. The ALJ asked a second hypothetical discussing noise and light tolerance. R. 103. The vocational expert testified that the previously listed jobs remained, except for machine operator. R. 103.

In direct contradiction to Ms. Coleman's argument, the vocational expert testified affirmatively that she could continue to perform past relevant work – specifically that of cleaner-hospital, assembler, fast food worker, and machine operator. R. 102–03.

The ALJ included all of the limitations in Ms. Coleman's residual functional capacity in the first hypothetical she posed to the vocational expert. Therefore, the vocational expert's testimony was based on a proper statement by the ALJ and constitutes substantial evidence supporting the ALJ's decision. Despite Ms. Coleman's argument to the contrary, the ALJ was not required to include further limitations in the hypothetical questions.

Finally, although Ms. Coleman argues that the ALJ should have considered the vocational expert's testimony in response to her attorney's questions regarding the need to switch positions and absenteeism, the ALJ did not include these limitations in her residual functional capacity. Therefore, the vocational expert's testimony on these points is not relevant to the residual functional capacity questions as posed by the ALJ. There is no error in the ALJ's consideration of the vocational expert testimony.

**C. The ALJ's Evaluation of the Handicap Decal and Disability Determination by the Insurance Company**

Pursuant to SSA regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). As to other disability determinations, such as a handicap parking decal or a decision by a private long-term disability insurance company, the new regulations state that "we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 404.1504. Moreover, the regulations specify that "[d]ecisions made by other governmental agencies and nongovernmental entities" constitute evidence that is "inherently neither valuable nor persuasive." 20 C.F.R. § 404.1520b(c)(1)–(3). The Commissioner is not required to "provide any analysis about how [the SSA] considered such evidence in [the] determination or decision." *Id.* § 404.1520b(c). *See also Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (rejecting argument that an inference could be drawn from a doctor ordering a plaintiff a handicap sticker because "the conclusion of disability is reserved to the [Commissioner]"); *Sims v. Astrue*, No. 12-469-N, 2013 WL 372151, at *4 (S.D. Ala. Jan. 30, 2013) (finding that the fact that "plaintiff obtained a handicapped parking permit" "would not make a difference in the court's analysis").

Ms. Coleman argues that the decision of Symetra Life Insurance Company as well as her "Alabama Handicap decal" are evidence of disability. Doc. 14 at 2; *see*

*also* Doc. 1-1 at 4. The Commissioner argues that "[a]lthough [Ms. Coleman] argues that insurance companies and doctors have agreed that she is disabled . . . the Commissioner's regulations make clear that" this is "evidence that 'is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled.'" Doc. 16 at 12 (quoting 20 C.F.R. §§ 404.1520b(c)(1)–(3)).

Ms. Coleman provides two letters from Symetra Life Insurance Company. *See* Doc. 1-1 at 7–10. A letter dated August 9, 2021, states that Ms. Coleman "has been receiving [Long Term Disability] benefits since September 7, 2020." *Id.* at 7. A letter dated August 22, 2022, states that Ms. Coleman's "Long Term Disability (LTD) claim was approved and benefits began to accrue as of September 7, 2020." *Id.* at 8. The letter includes Symetra's definitions of "total disability" and "partial disability." *Id.* Additionally, the letter states that "[t]he documentation we received supports that you are disabled from performing the duties of any occupation for any employer as described in the definition of disability stated above." *Id.* at 9. Ms. Coleman provided her handicap decal number. Doc. 14 at 2.

The court is not persuaded by Ms. Coleman's argument that the ALJ erred by not properly evaluating her handicap parking decal or the disability finding of Symetra Life Insurance Company. Under the regulations, the ALJ was not required to assign any persuasiveness or provide any analysis of these disability determinations. *See* 20 C.F.R. §§ 404.1504, 404.1520b(c)(1). Rather, the ALJ was

required only to consider the evidence underlying the decisions. *See id*. To the extent Ms. Coleman argues that the ALJ erred by not considering the evidence underlying the decision, the court finds such argument unpersuasive because of the ALJ's comprehensive assessment of all the evidence received in Ms. Coleman's claim under 20 C.F.R. § 404.1513. *See* R. 56–67. Additionally, Ms. Coleman has not identified any evidence that she claims was not considered. The only medical evidence Ms. Coleman specifically cites in her brief is an MRI, Doc. 14 at 1, which the ALJ addresses in her decision, R. 62. Therefore, pursuant to the regulations, the ALJ properly considered the supporting evidence.

### D. The ALJ's Evaluation of Step Three

At step three of the sequential evaluation process, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii). The claimant bears the burden of showing that her condition meets or equals a listing. *Castle v. Colvin*, 557 F. App'x 849, 852 (11th Cir. 2014). A claimant "must produce specific medical findings that satisfy all the criteria of a particular listing." *Sanderlin v. Comm'r of Soc. Sec.*, No. 2-14-CV-484-FTM-CM, 2015 WL 3627263, at *6 (M.D. Fla. June 10, 2015).

Ms. Coleman states that "[a]ccording to Social Security Blue Book 2024; Listing of Impairments–Adult Listing (Part A); I qualify for 1.00 Musculoskeletal Disorders (Multilevel Disc Degeneration), 11.00 Neurological Disorders (Nerve damage/Benign Intracranial Hypertension), and 12.00 Mental Disorders (Anxiety/Depression)." Doc. 14 at 2. However, Ms. Coleman also cites her attorney's statement at her hearing before the ALJ that "there's nothing that meets a listing." *Id.* The Commissioner does not respond to Ms. Coleman's argument regarding the listings. *See generally* Doc. 16.

The court is not persuaded by Ms. Coleman's statement regarding the listings. The court finds that Ms. Coleman has abandoned any argument regarding the listings because she did not brief the issue. *See Gamble*, 685 F. App'x at 890. Ms. Coleman only includes a single sentence to encompass three listings and does not point to any error in the ALJ's analysis at step three. *See* Doc. 14 at 2; R. 59–61. At most, her argument is bare and unsatisfactory – she provides citations to only the broad categories of impairments and makes no citations to the record to explain what evidence supports each listing. *See Smedley v. Kijakazi,* CV 122-064, 2023 WL 2533149, at *7 (S.D. Ga. Feb. 8, 2023) ("Plaintiff only cites to the broad categories of impairments, providing little guidance on which specific listings he believes he meets and making no citations to the record to explain what evidence supports each listing."). Although Ms. Coleman is a *pro se* litigant, the court "will not parse

through the dozens of listings in each category and the hundreds of pages of medical records to make [her] argument for [her]." *Id.* Because Ms. Coleman does not specify which listing she allegedly meets or equals, nor does she show how the medical evidence satisfies any listing, this issue is abandoned.

## V.    Conclusion

The ALJ's determination that Ms. Coleman is not disabled is supported by substantial evidence. The Commissioner's final decision is therefore affirmed. A separate order will be entered.

**DONE** and **ORDERED** this 5th day of June, 2025.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE